## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KAREN DURAND, : No. 3:25cv740
          Plaintiff :
           : (Judge Munley)
    v. :
           :
LAKE SCRANTON URGENT CARE, :
LLC
          Defendant :

### MEMORANDUM

Defendant Lake Scranton Urgent Care, LLC terminated Karen Durand after she experienced a severe asthma attack following her first day of work as a receptionist at an urgent care clinic. In her complaint, Durand asserts that she experienced disability discrimination. She claims that she suffered financial losses and emotional injury as the result of her termination.

Lake Scranton Urgent Care failed to respond to Durand's complaint. Based on defendant's default, plaintiff's motion for default judgment will be granted. The court will award plaintiff back pay, compensatory damages, and certain out-of-pocket expenses.

Also before the court is plaintiff's motion for attorneys' fees for her counsel. After review, the court will deny the motion without prejudice and permit plaintiff's counsel to resubmit the motion within the next fourteen (14) days.

## Background and Procedural History

On April 28, 2025, Durant filed suit against Lake Scranton Urgent Care, LLC asserting claims pursuant to Title I of the Americans with Disabilities Act, as amended, 42 U.S.C. §§ 12101–12103, 12111–12117 and the Pennsylvania Human Relations Act, 43 PA. STAT. § §§ 951–963. (Doc. 1). The Clerk of Court issued a summons to plaintiff that same day. (Doc. 2).

Regarding service, Durand filed an affidavit from a professional process server approximately 45 days later as required by Federal Rule of Civil Procedure 4(*l*). (Doc. 5). According to the affidavit, a copy of the summons and complaint were served upon a "Mrs. Balchune" on June 16, 2025 at 1141 Moosic St., Suite 3, Scranton, PA 18505. Id. The server's affidavit identified Balchune as a manager employed by Lake Scranton Urgent Care. The affidavit also identified the above address as her usual place of work. Id. On the face of the server's affidavit, plaintiff complied with the service rules.[1]

---

[1] A corporation, partnership, or association must be served: 1) in the manner prescribed by the rules for service upon an individual by FED. R. CIV. P. 4(e)(1); or 2) by delivering a copy of the summons and complaint to "an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant[.]" FED. R. CIV. P. 4(h).

Pursuant to Rule 4(e)(1), the rule referenced in Rule 4(h), service upon an individual may be achieved by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made[.]" FED. R. CIV. P. 4(h). Under the Pennsylvania Rules of Civil Procedure: "[s]ervice of original process upon a corporation or similar entity shall be made by handing a copy to any of the

According to the Federal Rules of Civil Procedure, an answer, motion asserting a Rule 12(b) defense, or other response to the complaint was due on or before July 7, 2025. See FED. R. CIV. P. 12(a)(1)(A)(i) (providing defendants with 21 days to serve an answer), 12(b) (providing defendants with an opportunity to assert certain defenses before pleading). Lake Scranton Urgent Care did not answer or otherwise respond to the complaint in the time afforded by the rules.

On July 9, 2025, Durand filed a request for entry of default pursuant to Rule 55(a). (Doc. 6). On July 15, 2025, the Clerk of Court entered default against defendant. (Doc. 7). Thereafter, plaintiff filed a motion for default judgment under Rule 55(b) along with a brief in support. (Docs. 9-10). Plaintiff's filings included a certificate of service signed by counsel indicating that the motion and brief were mailed to the defendant.

Subsequently, on September 4, 2025, the court listed this matter for a hearing. (Doc. 11). The order issued by the court indicated that a hearing would be held on October 16, 2025. The order further directed the Clerk of Court to serve defendant with a copy of the scheduling order at the above address via USPS Certified Mail along with plaintiff's motion and brief. Id. On September 15, 2025, the Clerk of Court filed a return receipt indicating that an individual signed

---

following persons provided the person served is not a plaintiff in the action...(2) the manager, clerk or other person for the time being in charge of any regular place of business or activity of the corporation or similar entity[.]" PA. R. CIV. P. 424(2).

3

for the mail on behalf of the defendant on September 12, 2025, or coincidentally, exactly two years after plaintiff's first and last workday.[2] (Doc. 13).

On October 16, 2025, the court conducted a hearing at the time and place indicated on the order.  Durand appeared before the court with counsel.  Despite having notice of the proceedings, a representative for Lake Scranton Urgent Care failed to appear at the time of the motion hearing.[3]

## Analysis

Under the Federal Rules of Civil Procedure, the court is authorized to enter a default judgment on a plaintiff's motion against a properly served defendant who fails to file a timely responsive pleading. FED. R. CIV. P. 55(b)(2).  "[T]he entry of a default judgment is left primarily to the discretion of the district court." Hritz v. Woma Corp., 732 F.2d 1178, 1180 (3d Cir. 1984)(citation omitted). Decisions on the merits are generally encouraged, and default judgments are generally disfavored. See Harad v. Aetna Cas. & Sur. Co., 839 F.2d 979, 982 (3d Cir. 1988) (citing Tozer v. Charles A. Krause Milling Co., 189 F.2d 242, 245 (3d Cir.1951).

---

[2] See also USPS.com Tracking Information, https://tools.usps.com/go/TrackConfirmAction?qtc_tLabels1=70150640000725938582 (available until 09/11/2027).

[3] The court has original jurisdiction over plaintiff's ADA claim pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over her PHRA claim pursuant to 28 U.S.C. 1367(a)

In determining whether default judgment should be granted, courts consider three factors: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." Chamberlain v. Giampapa, 210 F.3d 154, 164 (3d Cir. 2000) (citation omitted). When a defendant has failed to appear or respond in any fashion to the complaint, the analysis is necessarily one-sided; thus, the entry of default judgment is typically appropriate unless and until the defendant comes forward with a motion to set aside. See Fridline v. Millennia Tax Relief, LLC, 727 F. Supp. 3d 517, 521 (M.D. Pa. 2024); Adlife Mktg. & Commc'ns Co. v. Ad Post Graphics Media Mktg., Inc., 708 F. Supp. 3d 567, 572 (M.D. Pa. 2023) (citations omitted).

In this case, the above factors all lean to plaintiff's side due to the defendant's default. Durand will experience prejudice if her motion is denied. Absent a default judgment, Durand would not be able to recover damages or experience the full exercise of the rights afforded by federal and state anti-discrimination laws. Additionally, there are no litigable defenses discernable at the present time due to Lake Scranton Urgent Care's failure to respond to Durand's complaint. Third, defendant has engaged in culpable conduct by not engaging in this litigation despite facially proper service of the summons and complaint. The court has also made efforts to provide defendant with notice of

5

default judgment proceedings to no avail.  Therefore, although disfavored, entry of default judgment is more than appropriate under the circumstances presented.

Consequently, all the factual allegations of the complaint are now taken as true, except those relating to the amount of damages.  See Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990).  Even still, "liability is not deemed established simply because of the default[.]" 10A Wright & Miller's Federal Practice and Procedure § 2688.1 (4th ed. & Supp. Sept. 2025).  The court must next ascertain whether the unchallenged facts constitute legitimate causes of action, since a party in default does not admit mere conclusions of law.  See Chanel, Inc. v. Gordashevsky, 558 F. Supp. 2d 532, 536 (D.N.J. 2008) (citations omitted); see also Fridline, 727 F. Supp. 3d at 522–24 (considering whether the allegations in the complaint, taken as true, stated claims under the Telephone Consumer Protection Act); Adlife Mktg. & Commc'ns Co., 708 F. Supp. 3d at 573–76 (same, with respect to claims under Title 17 of the United States Code).

### 1. Liability

As for Durand's ADA claim, employers are prohibited from "discriminat[ing] against a qualified individual on the basis of disability in regard to…discharge of employees and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).  Under the PHRA, it is an unlawful discriminatory practice for

6

employers to discharge an employee because of their disability. 43 PA. STAT. §
955(a).

For Durand to establish a *prima facie* case of disability discrimination under
the ADA and PHRA, she must show that (1) she "is a disabled person within the
meaning of the ADA"; (2) she "is otherwise qualified to perform the essential
functions of the job, with or without reasonable accommodations by the
employer"; and (3) she "has suffered an otherwise adverse employment decision
as a result of discrimination." [4] Taylor v. Phoenixville Sch. Dist., 184 F.3d 296,
306 (3d Cir. 1999).  In shorthand, Durand must establish that "[s]he was
disabled, was qualified for the job, and suffered discrimination because of [her]
disability." Gibbs v. City of Pittsburgh, 989 F.3d 226, 229 (3d Cir. 2021) (citing
Sulima v. Tobyhanna Army Depot, 602 F.3d 177, 185 (3d Cir. 2010)).

As to the first element, "disability" is defined under the ADA as: "(A) a
physical or mental impairment that substantially limits one or more major life
activities of such individual; (B) a record of such an impairment; or (C) being
regarded as having such an impairment." 42 U.S.C. § 12102(1).  The definition of
"disability" is to be construed broadly, covers impairments that are episodic in

---

[4] Durand's complaint reflects that she would rely upon inferences and other circumstantial
evidence to advance her disability discrimination claims.  The court thus considers plaintiff's
*prima facie* case under the framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S.
792 (1973).

nature, and requires courts to disregard "the ameliorative effects of mitigating measures" like medication. 42 U.S.C. § 12102(4). In her complaint, Durand alleges that she suffers from asthma. According to plaintiff, she experienced the worst asthma flare-up of her life after her first day of work at the defendant's clinic.[5] (Doc. 1, Compl. ¶¶ 14–16). Thereafter, Durant timely alerted the employer of her physician's visit for the asthma attack. She also timely provided her employer with medical documentation that she would need three days off from work to treat and recuperate. Id. ¶ 15–17. Thus, with her allegations, Durand has established that she is a person with a disability within the meaning of the ADA.[6]

As for the "otherwise qualified" element, a "qualified individual" is defined by the ADA as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C.A. § 12111(8). Under the law, "consideration shall be given to the employer's judgment as to what functions of a job are essential." Id.

---

[5] The court can reasonably infer from the allegations that Durand's asthma attack severely impaired her breathing. Breathing is a major life activity under the ADA definitions. 42 U.S.C. § 12102(2)(A).

[6] The court cites to the allegations in plaintiff's complaint in this section for the facts deemed true due to the defendant's default. Plaintiff testified in a manner consistent with her allegations at the time of the hearing on the motion for default judgment.

Based on Lake Scranton Urgent Care's decision not to defend against Durand's claims, the defendant's judgment about the essential functions of the receptionist job need not be considered. Thus, with Durand's allegations that Lake Scranton Urgent Care hired her and observed how she worked as a receptionist for at least one day, (Doc. 1, Compl. ¶ 14), her complaint demonstrates that she was otherwise qualified to perform the essential functions of the position, with or without reasonable accommodations by the defendant.

As for the third element, adverse employment action and causation, Durand found herself out of the job mere days after reporting her asthma attack and temporary work restriction to her employer. Id. ¶¶ 15–18.

The Third Circuit Court of Appeals has refrained from determining whether a "motivating factor" or "but-for" standard of causation applies to ADA discrimination claims following the ADA Amendments Act of 2008 and the Supreme Court's decisions in Gross and Nassar.[7] See Coleman v. Children's Hosp. of Philadelphia, No. 23-3064, 2024 WL 4490602, at *2, n.2 (3d Cir. Oct. 15, 2024). As for Durand's state law disability discrimination claim, the text of the PHRA supports application of a "but-for" causation standard, not a "motivating factor" standard. 43 PA. STAT. § 955(a) ("It shall be an unlawful discriminatory

---

[7] Gross v. FBL Financial Services, 557 U.S. 167 (2009); University of Texas Southwestern Medical Center v. Nassar, 570 U.S. 338 (2013).

practice…[f]or any employer because of…disability…to discharge from employment such individual or independent contractor").

Regardless, Durand's allegations satisfy both "motivating factor" causation and "but-for" causation standards. Plaintiff has alleged that she: 1) worked as a receptionist for an urgent care clinic for one day, a Tuesday; 2) experienced a severe asthma attack, sought treatment, and advised her employer of her doctor's orders all on a Wednesday; and 3) was terminated on that Friday.[8] At bottom, such allegations allow for a rebuttable presumption that Lake Scranton Urgent Care terminated Durand on the basis of her disability. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993); Fowler v. UPMC Shadyside, 578 F.3d 203, 213 (3d Cir. 2009); see also Texas Dep't of Cmty. Affs. v. Burdine, 450 U.S. 248, 254 n.7 (1981) (clarifying that the use of the phrase "*prima facie* case" in the McDonnell Douglas framework only denotes the creation of a legally mandatory, rebuttable presumption). That presumption goes unrebutted based upon the defendant's default. Durand has thus demonstrated that Lake Scranton Urgent Care is liable under the ADA and PHRA. See Burdine, 450 U.S. at 254 ("If

---

[8] Retaliation claims can go to trial based on two days of temporal proximity between protected activity and an adverse employment action. See Jalil v. Avdel Corp., 873 F.2d 701, 709 (3d Cir. 1989).

the employer is silent in the face of the presumption, the court must enter

judgment for the plaintiff because no issue of fact remains in the case.").

Having determined that Durand has two legitimate causes of action in this

matter, the court turns to her demand for a jury trial and proof of her damages.

### 2. Jury Demand

Rule 55(b) permits the court to conduct hearings on damages when

entering a default judgment – "preserving any federal statutory right to a jury

trial[.]" FED. R. CIV. P. 55(b)(2).   Durand's complaint demands a jury trial on her

ADA and PHRA claims, which includes a request for compensatory damages.

Her jury demand for compensatory damages is authorized by statute for her ADA

claim and preserved by the Seventh Amendment for her PHRA claim when

asserted in federal court. See 42 U.S.C. § 1981a(a)(2), (c)(1); Marra v.

Philadelphia Hous. Auth., 497 F.3d 286 (3d Cir. 2007); see also Wertz v.

Chapman Twp., 741 A.2d 1272, 1277 (Pa. 1999) (holding there is no right to trial

by jury for PHRA claims in a state forum under the text of the statute and the

Pennsylvania Constitution).   Thus, Durant has an intact right to a jury trial on her

demand for compensatory damages even in the case of defendant's default.[9]

---

[9] The ADA, in turn, incorporates the remedies of Title VII of the Civil Rights Act of 1964.
Spencer v. Wal-Mart Stores, Inc., 469 F.3d 311, 316 (3d Cir. 2006); 42 U.S.C. § 12117; 42
U.S.C. §2000e-5(g)(1). Thus, Durand is not entitled to have a jury determine her back pay, as
that remains an equitable remedy under the ADA.  Under the PHRA, in the event of employer
liability, the court can award back pay or any other legal or equitable relief as the court deems
appropriate.  43 PA. STAT. § 962(c)(3).

At the time of the hearing on her motion for default judgment, the court addressed plaintiff's demand for a jury trial within her complaint. Durand knowingly and voluntarily waived any right to proceed before a jury after consultation with her counsel and following a colloquy by the court. It is thus proper for the court to make findings of fact and conclusions of law on all claims for damages. See FED. R. CIV. P. 39(a)(1); 52(a)(1).

### 3. Back Pay

Durand testified in this matter as to her back pay. According to the plaintiff, she was hired as a receptionist to work a full-time, forty hour per week schedule at a rate of $24.00 per hour. Prior to obtaining the job, plaintiff described a year-long search to find a position in a medical office commensurate with her work experience. During her testimony, Durand described her past work history. Pertinent here, Durand relayed that she was employed for an orthopedic surgeon in a medical office for approximately 25 years. Durand also explained that she enjoyed subsequent employment with a dentist in a medical clinic for several additional years. Plaintiff further testified that she had experience as an x-ray technician, electrocardiogram (EKG) technician, phlebotomist, and in medical billing. According to the plaintiff, she accepted the job as a receptionist at defendant's urgent care clinic because of promises that she would have an

opportunity to learn other roles within the clinic and eventually resume hands-on patient care.

Durand further testified that Lake Scranton Urgent Care withheld her one day's pay until December 2023, or for approximately two months. According to the plaintiff, she made extensive efforts over that time to receive her wages. Eventually, she was directed by the individual that hired her to meet him in the parking lot of the clinic. When Durand arrived, that individual initially would not provide her with her wages until she signed a release of all legal claims. Durand testified that she refused to sign a release. According to plaintiff, defendant's representative eventually relented and provided her with a check. She further testified that the check was for "200-something dollars" and was not in the form of a payroll check. Rather, according to the plaintiff, the check appeared to be from a general business account. At the time of her testimony, Durand did not supply a paystub or other documentation supporting her narrative.

Nonetheless, Durand's lack of a paystub or other corroborating evidence does not foreclose her back pay claim. In the absence of any cross-examination due to the defendant's default, the court can only conclude that plaintiff testified credibly based on the substance of her answers and her tone and tenor of responding to the questions posed by her counsel and the court. Durand's credible testimony regarding her work experience provided sufficient detail about

13

her skills and qualifications to justify the approximate hourly rate advanced in her testimony.[10]  Such unrebutted testimony painted a picture of disreputable tactics by the defendant regarding plaintiff's termination and delayed payment for a day's work.  Based on her credible testimony, plaintiff is entitled to an award of $960.00 per week in back pay.

That back pay award will be applied to a limited period because Durand also mitigated her damages.  Specifically, plaintiff testified that she obtained new employment in a dental office by the last week of October 2023.  Durand is thus entitled to six (6) weeks of back pay.  Based on the weekly rate calculated above, the court will award $5,760 in back pay as an equitable remedy under both the ADA and PHRA.[11]

Plaintiff, however, did not specifically request prejudgment interest on any back pay award.  However, there is a strong presumption in favor of awarding prejudgment interest "to make victims of discrimination whole." Booker v. Taylor Milk Co., 64 F.3d 860, 868 (3d Cir. 1995) (citation omitted).  "The award of prejudgment interest is compensatory in nature; it serves to compensate a

---

[10] Durand's testimony regarding the backpay calculation is based upon her personal knowledge of her rate of pay.  The calculations are not complex.  Thus, her lay testimony is sufficient to establish her economic damages. See Donlin v. Philips Lighting N. Am. Corp., 581 F.3d 73, 82 (3d Cir. 2009).

[11] Durand's complaint requests additional damages for lost raises and benefits, front pay, and future earning capacity.  Such requests are not supported by the evidence and will not be awarded. (Doc. 1, Compl., ad damnum clauses, at 6, 7).

plaintiff for the loss of the use of money that the plaintiff otherwise would have earned had [she] not been unjustly discharged." Id. (citations omitted).  In Booker, the Third Circuit Court of Appeals held that prejudgment interest should be awarded even where a plaintiff does not mitigate her damages. Id. at 869.

There is no specific statutory provision that governs the calculation of interest on backpay.  Based on legislative silence, the court will follow the decisions of other judges in this district and apply the Internal Revenue Service overpayment rates set forth at 26 U.S.C. § 6621(a)(1); that is, the federal short-term rate plus three (3) percentage points. Moffitt v. Tunkhannock Area Sch. Dist., No. CV 3:13-1519, 2017 WL 319154, at *19 (M.D. Pa. Jan. 20, 2017) (Mannion, J.); Taylor v. Cent. Pennsylvania Drug & Alcohol Servs. Corp., 890 F. Supp. 360, 369 (M.D. Pa. 1995).  During the last two years, the IRS overpayment rate has fluctuated between 7% and 8%.[12]  Accordingly, the court will use an interest rate of 7.5% per year.

There is also no clear rule regarding whether simple interest or compound interest should be used when calculating the prejudgment interest amount. Moffitt, 2017 WL 319154, at *19.  The court will use compound interest in this case.  In doing so, the court enjoys discretion in its determination of how often

---

[12] https://www.irs.gov/payments/quarterly-interest-rates#prior

interest should be compounded. Id. The court believes that interest should be compounded yearly. Id.  Based on the court's calculations, plaintiff is entitled to an additional $896.40 in prejudgment interest on her economic damages for a total backpay award of $6656.40 under the ADA and PHRA.[13]

### 4. Compensatory Damages

Durand also seeks compensatory damages under the Civil Rights Act of 1991, 42 U.S.C. § 1981a, which provides for the recovery of such damages as the result of disparate treatment discrimination in violation of the ADA.

Pursuant to the PHRA, if the court determines that a defendant has engaged in an unlawful discriminatory practice, the court must "enjoin the respondent from engaging in such unlawful discriminatory practice and order affirmative action which may include, but is not limited to, reinstatement or hiring of employes, granting of back pay, or any other legal *or equitable relief as the court deems appropriate.*" 43 PA. STAT. § 962(c)(3) (emphasis added).  The relief provision of the PHRA "is quite broad[.]" Keck v. Com. Union Ins. Co., 758 F. Supp. 1034, 1039 (M.D. Pa. 1991).  Compensatory damages may be recovered for humiliation, emotional distress, and mental anguish under the PHRA. See

---

[13] The court uses the formula $A=P(1+r)^t$, where $A$ is the final amount, $P$ is the initial amount, $r$ is the annual interest rate, and $t$ is the number of years.  Given an initial amount of $5,760, an interest rate of 0.075 (7.5%), and a time of 2 years, the formula in this case yields an equation of $A=5760(1+.075)^2$ or A= $6656.40.  To determine the total interest earned, the initial amount is subtracted from the final amount, i.e., $6656.40-$5760.00 = $896.40.

Taylor, 890 F. Supp. 360, 376 (M.D. Pa. 1995).   Moreover, pursuant to

Pennsylvania law, "[a] complainant's own testimony of embarrassment and

humiliation can suffice to support an award for compensatory damages[]" for

violation of the PHRA.  1400 Main Holdings, LLC v. Pennsylvania Hum. Rels.

Comm'n, 326 A.3d 1040, 1046 (Pa. Commw. Ct. 2024)(quoting Girard Finance

Co. v. Pennsylvania Hum. Rels. Comm'n, 52 A.3d 523, 536 (Pa. Commw. Ct.

2012)).  "Damage awards under the PHRA serve a dual purpose: to discourage

discrimination and to restore the injured party to his or her pre-injury status." Id.

at 1045 (citation omitted).

As for the testimony regarding her emotional distress damages, Durand

testified that she was "devastated" after being terminated by the defendant.

Based on plaintiff's explanation that she spent approximately one year looking for

work in the medical field, the court finds such testimony to be credible.  On the

other hand, Durand conceded that she did not seek counseling or other mental

health treatment following her termination.  According to her testimony, plaintiff,

in essence, picked herself back up and resumed applying for positions within the

medical field.

After deliberating upon such testimony, Durand should be commended for

finding another position within six weeks of her termination.  Durand should also

be commended for maintaining a positive attitude.  Unfortunately, however, her

testimony limits the amount of her recovery in terms of pain and suffering or emotional distress damages. Based on Durand's testimony, the court will award $1,000.00 in compensatory damages under the ADA and PHRA.[14]

As a supplemental consideration, Durand explained that her out-of-pocket costs to travel to Scranton for default judgment proceedings were an actual hardship, as she is no longer employed. Rather, Durand has relocated to Ocean County, New Jersey to provide care to her elderly mother and her adult son with a disability. Durand testified credibly that she incurred travel and hotel expenses in returning to Scranton for court proceedings. Pursuant to the broad authority provided by the PHRA, the court will supplement Durand's compensatory damages award with an award of out-of-pocket costs in the amount of $250.00 for fuel, tolls, and hotel accommodations. In total, the court will enter a default judgment in favor of Durand and against Defendant Lake Scranton Urgent Care in the amount of $7,906.40.

### 5. Attorneys' Fees and Costs

Just after the hearing, counsel for plaintiff filed a motion seeking attorney's fees along with supporting exhibits. (Docs. 17–18, 18-1 to 18-4). Both the ADA

---

[14] In her submissions related to the motion for default judgment, plaintiff has also requested punitive damages pursuant to 42 U.S.C. §1981a(b). (Doc. 14). Plaintiff's complaint does not contain a demand for punitive damages. Pursuant to the Federal Rules of Civil Procedure, "[a] default judgment must not differ in kind from, or exceed in amount what is demanded in the pleadings." FED. R. CIV. P. 54(c). Thus, punitive damages will not be awarded in this case.

and the PHRA permit the award of reasonable attorneys' fees to a prevailing party.  See 42 U.S.C. § 12205 (ADA); 43 PA. STAT. § 962(c).  Durand is clearly a prevailing party, as a default judgment will be entered in her favor.  She is thus eligible for an award of attorneys' fees.

Courts in the Third Circuit assess requests for attorneys' fees by using the lodestar method. In re: S.S. Body Armor I., Inc. v. Carter Ledyard & Milburn LLP, 927 F.3d 763, 773 (3d Cir. 2019).  Using this formula, a court determines the reasonable fee "by multiplying the number of hours...reasonably worked on a client's case by a reasonable hourly billing rate for such services given the geographical area, the nature of the services provided, and the experience of the lawyer." Id.

The party seeking attorneys' fees bears the burden of proving the reasonableness of their request. Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990); see also Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984) ("To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.").  The failure to make a *prima facie* showing that counsel's proposed rates and hours are reasonable provides courts with

19

discretion to deny a motion for attorneys' fees. See Martin v. Boeing Co., No. CV 20-5401, 2025 WL 1093802, at *4 (E.D. Pa. Apr. 11, 2025).  However, "[w]hen the applicant for a fee has carried his burden of showing that the claimed rates and number of hours are reasonable, the resulting product is presumed to be the reasonable fee to which counsel is entitled." Maldonado v. Houstoun, 256 F.3d 181, 184 (3d Cir. 2001) (citation omitted).

In this matter, the defendant has defaulted.  Generally, "[t]he court may not reduce an award *sua sponte*; rather, it can only do so in response to specific objections made by the opposing party." Interfaith Cmty. Org. v. Honeywell Int'l, Inc., 426 F.3d 694, 711 (3d Cir. 2005), as amended (Nov. 10, 2005).  On the other hand, courts maintain "an active and affirmative function in the fee-fixing process," extending beyond a passive acceptance of submitted requests. Maldonado, 256 F.3d at 184 (3d Cir. 2001).  A court is not obligated to endorse an inappropriate order simply due to a lack of objection from a defaulting party. See McKenna v. City of Philadelphia, 582 F.3d 447, 459, n.13 (3d Cir. 2009) ("Nevertheless it should not be overlooked that the awarding of an attorney's fee is a judicial action and, regardless of the parties' indifference to it, a court need not lend its imprimatur to an inappropriate order merely because there was no objection to its entry.") (citation omitted).  Furthermore, a court may *sua sponte*

reduce requested fees concerning matters within the judge's personal knowledge. Young v. Smith, 905 F.3d 229, 234 (3d Cir. 2018).

In this case, counsel for plaintiff has submitted two affidavits in support of a request for attorneys' fees, each making general statements about experience. One affidavit, dated July 31, 2025 and submitted with the motion for default judgment, requests an hourly rate of $300.00 for 32.60 hours of work. (Doc. 9-2). A second affidavit, dated October 16, 2025 and submitted with the motion for attorneys' fees, requests an hourly rate of $450.00 for 37.95 hours of work. (Doc. 18-4).

An attorney's reasonable hourly rate is the prevailing rate in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. Clemens v. New York Cen. Mut. Fire Ins. Co., 903 F.3d 396, 402 (3d Cir. 2018) (citations omitted).  In most cases, "the relevant rate is the prevailing rate in the forum of the litigation." Interfaith Cmty. Org. v. Honeywell Int'l, Inc., 426 F.3d 694, 705 (3d Cir. 2005), as amended (Nov. 10, 2005).

Counsel's submissions lack specific information regarding comparable rates for attorneys with similar experience and expertise in employment discrimination matters within the local legal community.  Other than reference to the fee schedule established by Community Legal Services, Inc. ("CLS"), counsel

has not otherwise explained why his hourly rate increased by $150.00 over a six-week period to $450.00.[15]

For instance, in the Middle District of Pennsylvania, the Honorable Matthew W. Brann, Chief Judge, has noted that hourly rates for experienced attorneys ranged from $100 to $375 between 2019 and 2024. Holmes v. Am. HomePatient, Inc., No. 4:21-CV-01683, 2025 WL 321829, at *9 & n. 81 (M.D. Pa. Jan. 28, 2025) (collecting cases), appeal docketed, No. 25-1355 (3d Cir. March 3, 2025). Furthermore, in the past week, the Honorable Joseph F. Saporito adopted a report and recommendation from Chief Magistrate Judge Daryl F. Bloom in a similar case involving plaintiff's counsel. Hyle v. Veterans of Foreign Wars, No. 23cv2114 (Doc. 12, October 27, 2025). In that matter, attorneys' fees in the amount of $12,300 were awarded to plaintiff's counsel based on an hourly rate of $300.00 per hour where a default judgment had been entered against the defendant. Id.

Additionally, the district court is obligated to exclude hours that were not reasonably expended, including those that are excessive, redundant, or otherwise unnecessary. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). Time entries must be sufficiently specific to enable the court to assess the

---

[15] The Third Circuit Court of Appeals has indicated that the fee schedule supplied by CLS has been "widely accepted as fairly reflecting the prevailing market rates *in Philadelphia.*" Maldonado, 256 F.3d at 184 (emphasis added).

reasonableness of the hours claimed for the work performed. Washington v. Phila. Cnty. Ct. of Com. Pl., 89 F.3d 1031, 1037 (3d Cir. 1996). Furthermore, the Third Circuit has emphasized the necessity for district courts to meticulously review billing records, requiring a "line, by line, by line" examination. Interfaith Cmty. Org., 426 F.3d at 713 (citation omitted).

The billing records submitted in support of the motion contain mostly vague entries. For example, entries such as "document review," "document prep," and "document work" do not provide sufficient detail to ascertain the nature of the work performed or its necessity to the litigation and the specific documents reviewed or prepared here. This lack of specificity prevents the court from fulfilling its affirmative role in ensuring the reasonableness of the fee request, as required by precedent. Along with these vague entries, Durand herself explained that she did not supply certain employment-related documents to her counsel during her testimony. And, in some of the documents filed by counsel in this matter, there is evidence that they were repurposed from other litigation. (Doc. 10 at 2, 10 (referring to plaintiff in this case (twice) as "Ms. Hyle"); Doc. 18 at 6 (containing inconsistent statements as to the total costs and attorneys' fees requested)).

In fairness to plaintiff's counsel, he submitted his motion for attorneys' fees within hours of the hearing on plaintiff's motion for default judgment. Plaintiff's

counsel did so at the specific request of the court.  Under the Federal Rules of Civil Procedure, parties usually enjoy fourteen (14) days to file a motion for attorneys' fees and nontaxable expenses after entry of a judgment.  FED. R. CIV. P. 54(d)(2)(B)(i).  The court will deny thus plaintiff's motion for attorneys' fees without prejudice and provide counsel with leave to refile the motion within the next fourteen (14) days.  See Hall v. Borough of Roselle, 747 F.2d 838, 842 (3d Cir. 1984).

**Conclusion**

For the reasons set forth above, Plaintiff Karen Durand's motion for default judgment will be granted.  The Clerk of Court will be directed to enter a default judgment in favor of plaintiff and against defendant in the amount of $7,906.40. Plaintiff's motion for attorneys' fees will be denied without prejudice.  Plaintiff's counsel is afforded fourteen (14) days to resubmit the motion.  An appropriate order follows.

Date: _10/31/25_

JUDGE JULIA K. MUNLEY
United States District Court

24