IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KAREN DURAND,  **Plaintiff** | : No. 3:25cv740 :  : (Judge Munley) |
| v. | : : |
| LAKE SCRANTON URGENT CARE, LLC,  **Defendant** | : : : : |

## **MEMORANDUM ORDER**

Karen Durand was fired because she had an asthma attack after her first day of work at an urgent care clinic. She retained counsel and ultimately filed suit under the Americans with Disabilities Act ("ADA") and the Pennsylvania Human Relations Act ("PHRA"). The defendant did not bother to contest her allegations in federal court. After a hearing, the undersigned entered default judgment, calculating plaintiff's damages to be $7,906.40, mostly in the form of back pay. (Docs. 19–21).

Plaintiffs' attorneys may be awarded their reasonable fees, litigation expenses, and costs when their client prevails in ADA and PHRA disability discrimination cases – even when there is a default judgment outcome, even if there is doubt about collecting on a judgment, and even when the recovery is in the four-figures. See 42 U.S.C. § 12205; 43 PA. STAT. § 962(c.2); Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res., 532 U.S. 598,

this

604 (2001) (holding that enforceable judgments create the material alteration of the legal relationship of the parties necessary to permit an award of attorney's fees). For these reasons and others, lawyers who regularly pursue claims under fee-shifting statutes are incentivized to detail the time and work expended on cases. See Clemens v. New York Cent. Mut. Fire Ins. Co., 903 F.3d 396, 400 (3d Cir. 2018) (citation omitted) (noting that, while not mandated, fee petitions supported by contemporaneous records are the preferred practice in the Third Circuit).

In this matter, the court previously addressed a motion for attorney's fees filed by plaintiff's counsel.[1] (Doc. 19). After highlighting several issues for counsel, the motion was dismissed without prejudice and with leave to refile. Id. With the renewed motion, plaintiff's counsel requests that the default judgment be amended to include $13,282.50 in attorney's fees and $664.53 in costs. (Doc. 23, Br. in Supp.). The requested fees are calculated based on an hourly rate of $350.00 per hour and 37.95 hours of work. Id. With the renewed motion, some of the previously noted issues have been cured, but other overarching issues remain. Accordingly, the court will grant the motion but reduce attorneys' fees to

---

[1] Durand v. Lake Scranton Urgent Care, LLC, No. 3:25CV740, 2025 WL 3048969, at *8–10 (M.D. Pa. Oct. 31, 2025).

$8,750.00. The request for costs in the amount of $664.53 will be granted. The court will allocate $461.65 as taxable costs and $202.88 as litigation expenses.

**The Guiding Principles** – Courts in the Third Circuit assess requests for attorneys' fees by using the lodestar formula. In re: S.S. Body Armor I., Inc. v. Carter Ledyard & Milburn LLP, 927 F.3d 763, 773 (3d Cir. 2019). That is, a court determines the reasonable fee "by multiplying the number of hours...reasonably worked on a client's case by a reasonable hourly billing rate for such services given the geographical area, the nature of the services provided, and the experience of the lawyer." Id. (cleaned up). The lodestar is presumed to be the reasonable fee. Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990) (citing Blum v. Stenson, 465 U.S. 886, 895 (1984)).

The party seeking attorney's fees bears the burden of proving the reasonableness of their request. Id.; see also Blum, 465 U.S. at 895 n.11 ("To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.").

The failure to make a prima facie showing that counsel's proposed rates and hours are reasonable provides courts with discretion to deny a motion for

attorneys' fees. See Martin v. Boeing Co., No. CV 20-5401, 2025 WL 1093802, at *4 (E.D. Pa. Apr. 11, 2025). However, "[w]hen the applicant for a fee has carried his burden of showing that the claimed rates and number of hours are reasonable, the resulting product is presumed to be the reasonable fee to which counsel is entitled." Maldonado v. Houstoun, 256 F.3d 181, 184 (3d Cir. 2001) (citation omitted).

In this matter, default judgment has already been entered against the defendant for its failure to participate in the legal process after being formally notified of Durand's lawsuit. Generally, "[t]he court may not reduce an award *sua sponte*; rather, it can only do so in response to specific objections made by the opposing party." Interfaith Cmty. Org. v. Honeywell Int'l, Inc., 426 F.3d 694, 711 (3d Cir. 2005), as amended (Nov. 10, 2005). On the other hand, courts maintain "an active and affirmative function in the fee-fixing process," extending beyond a passive acceptance of submitted requests. Maldonado, 256 F.3d at 184. A court is not obligated to endorse an inappropriate order simply due to a lack of objection from a defaulting party. See McKenna v. City of Philadelphia, 582 F.3d 447, 459, n.13 (3d Cir. 2009) ("Nevertheless it should not be overlooked that the awarding of an attorney's fee is a judicial action and, regardless of the parties' indifference to it, a court need not lend its *imprimatur* to an inappropriate order merely because there was no objection to its entry.") (citation omitted).

Furthermore, a court may sua sponte reduce requested fees concerning matters within the judge's personal knowledge. Young v. Smith, 905 F.3d 229, 234 (3d Cir. 2018).

**Reasonable Hourly Rate** – An attorney's reasonable hourly rate is the prevailing rate in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. Clemens, 903 F.3d at 402 (citations omitted). In most cases, "the relevant rate is the prevailing rate in the forum of the litigation." Interfaith Cmty. Org., 426 F.3d at 705.

Here, plaintiff's counsel, Steve T. Mahan, Esq. advances that an hourly rate of $350.00 is reasonable. In support, he has supplied an affidavit noting his thirteen (13) years of experience as an attorney and his admission to state and federal courts. (Doc. 23-1). Attorney Mahan's reflects that he concentrates his practice in labor and employment matters as an attorney for Weisberg Cummings, P.C., a law firm which frequently represents employees in such cases before this court. Id.

In further support of the $350.00 hourly rate, counsel has supplied an affidavit from Lars Anderson, Esq, an attorney at Hourigan, Kluger, and Quinn, P.C. in Kingston, Pennsylvania. (Doc. 23-4). Attorney Anderson has appeared before the undersigned in various matters in state and federal court. Attorney Anderson avers that he bills at the above hourly rate in the Scranton/Wilkes-

Barre market for employment discrimination matters. Id. To aid in connecting the dots between Anderson's experience and Mahan's experience, court records were reviewed. Attorney Anderson has represented clients over a longer period; however, Attorney Mahan has been involved in considerably more cases in this district which involve the federal anti-discrimination statutes. Both lawyers also have other ADA cases pending before the undersigned. Therefore, in a case like this, Anderson's affidavit is acceptable for comparison's sake.

The Honorable Matthew W. Brann, Chief Judge of this district, has noted that hourly rates for experienced attorneys ranged from $100 to $375 between 2019 and 2024 in accepted fee petitions. Holmes v. Am. HomePatient, Inc., No. 4:21-CV-01683, 2025 WL 321829, at *9, n. 81 (M.D. Pa. Jan. 28, 2025) (collecting cases), appeal docketed, No. 25-1355 (3d Cir. March 3, 2025). Furthermore, Holmes established a range of $230.00 to $375.00 per hour in the Williamsport vicinage for experienced attorneys. Id. In making this determination, Judge Brann referred to the upper end of that range as "an underrepresentation of the rates in the larger markets in Scranton/Wilkes-Barre and Harrisburg." Id. at *9.

Attorney Mahan's requested rate of $350.00 aligns with the rates contemplated in Holmes. Consequently, for the above-discussed reasons, $350.00 per hour is a reasonable hourly rate in this vicinage for this lawyer in

light of the uncontested motion. The court will calculate the lodestar using this hourly rate.

**Reasonable Hours Worked** – During review of a motion for attorney's fees, the district court is obligated to exclude hours that were not reasonably expended, including those that are excessive, redundant, or otherwise unnecessary. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). As a result, time entries must be sufficiently specific to enable the court to assess the reasonableness of the hours claimed for the work performed. Washington v. Phila. Cnty. Ct. of Com. Pl., 89 F.3d 1031, 1037 (3d Cir. 1996). Furthermore, the Third Circuit has emphasized the necessity for district courts to meticulously review billing records, requiring a "line, by line, by line" examination. Interfaith Cmty. Org., 426 F.3d at 713 (citation omitted).

Attorney Mahan advances that he expended 37.95 hours on Durand's case. (Doc. 23-2). The court previously noted deficiencies with the time entries supplied by counsel. Id. For example, entries such as "document review," "document prep," and "document work" did not provide sufficient detail to ascertain the nature of the work performed or its necessity to the litigation. (Doc. 19 at 23). These vagueness issues have been cured in the revised motion. The court now has a better understanding of the time expended in this

straightforward, uncontested ADA matter once administrative proceedings ended in February 2025.

Under the law, where a lawyer's time was not reasonably expended, a court may exclude such time from calculation of the lodestar. Hensley, 461 U.S. at 433. Further, the Third Circuit does not "approve the wasteful use of highly skilled and highly priced talent for matters easily delegable to non-professionals or less experienced associates." Ursic v. Bethlehem Mines, 719 F.2d 670, 677 (3d Cir. 1983).

Upon review of the supporting documents, several time entries will not be accepted considering the other evidence about counsel's experience. For example, the following entries relate to the filing of this action and service of the complaint and summons:

| Date | Description | Hours |
|---|---|---|
| Monday, February 17, 2025 | Document Prep (Complaint) | 2.50 |
| Friday, April 25, 2025 | Document Work/Preparation (Complaint) | 1.00 |
| Monday, April 28, 2025 | Complaint Filing | 0.50 |
| Monday, April 28, 2025 | Document Work/Preparation (Service Packet) | 1.50 |
| Wednesday, April 30, 2025 | Document Review (Order) | 0.50 |
| Friday, June 13, 2025 | Document Work/Preparation (Service) | 0.50 |
| Friday, June 13, 2025 | Arrange for Service | 0.50 |
| Friday, June 13, 2025 | Document Review (Order) | 0.20 |
| Tuesday, June 17, 2025 | Document Work/Preparation (Service) | 0.50 |
| Tuesday, June 17, 2025 | Service Filing | 0.20 |

(Doc. 23-2 at 2).

For reference, the complaint in this case is seven (7) pages consisting of thirty-seven (37) numbered paragraphs, two *ad damnum* clauses for relief under the ADA and PHRA, and a jury demand. (Doc. 1). Given counsel's years of

experience in this area of the law, it could not have reasonably taken 3.5 hours to draft the complaint filed in this case.

Counsel also billed for tasks related to completing the service packet and making service. The service packet generated by the Clerk of Court consists of eight (8) forms. (Doc. 2-1, Summons and Related Forms). These forms may be tedious, assuming counsel is tasked with filling out the boxes. Even still, completion of a service packet cannot reasonably take 2.5 hours in a single-defendant case, even when factoring in telephone calls and emails to a process server.

Furthermore, this case did not feature any case management conferences, discovery requests and responses, meet-and-confers, depositions, or other pre-trial proceedings. Rather, counsel was only tasked with filing a motion for default and motion for default judgment to trigger a proceeding concerning his client's damages. The following entries relate to the filing of the motion for default and motion for default judgment:

| Date | Description | Hours |
|---|---|---|
| Monday, July 7, 2025 | Document Work/Preparation (Default) | 1.50 |
| Wednesday, July 9, 2025 | Document Work/Preparation (Default) | 2.50 |
| Wednesday, July 9, 2025 | Request Entry of Default | 0.50 |
| Wednesday, July 9, 2025 | Serve Request for Entry of Default | 0.50 |
| Tuesday, July 15, 2025 | Default Order Entered | 0.20 |
| Tuesday, July 22, 2025 | Serve Default Order | 0.50 |
| Wednesday, July 23, 2025 | Document Work/Preparation (Affidavit & Default) | 2.50 |

(Doc. 23-2 at 2).

The motion for default is not wordy. It is three (3) pages long — eight (8) total pages counting the one-page certificate of service, a one-sentence proposed order, a title page for an exhibit, and a two-page affidavit from plaintiff's counsel explaining service efforts. Nothing contained in these eight (8) pages suggests that it took four (4) total hours to prepare.[2]

Even with the above issues, the court exercises its discretion and will not deny the request for attorney's fees and costs outright. See e.g. Young, 905 F.3d at 235; Clemens, 903 F.3d at 403. The offending entries above will not be stricken. Rather, the court will reduce the lawyer-billed time in this case to twenty-five (25) total hours. See Young, 905 F.3d at 234 (citing McKenna, 582 F.3d at 459 n.13). In essence, plaintiff's counsel billed approximately sixteen (16) hours for the above-cited tasks related to the complaint, service of the complaint and summons, and preparing the motion for default. He will be awarded the three (3) hours it would have taken a lawyer with more than a decade of experience to reasonably complete, even without the assistance of

---

[2] The motion for default judgment, exhibits, and brief in support totaled 23 pages in length, including a lengthy affidavit from the plaintiff detailing her damages. Counsel thus appears to have billed less time for preparing the motion for default judgment than the motion for default. Considering the additional work the motion for default judgment would require, the court will not make any adjustments to the entries related to this motion.

support staff. The entry of default judgment simply cannot serve as a blank check for attorneys in fee-shifting cases.

**The Lodestar Calculation** – Here, the calculation is straightforward (like this case): 25 hours × $350.00/hour = $8,750. The court will thus award $8,750 in attorney's fees to plaintiff's counsel – still more than the damages awarded to the plaintiff herself.

**Costs** – Counsel also seeks costs in the amount of $664.53 for filing, service, postage, and mileage/parking for counsel to travel from the Harrisburg area to Scranton for the default judgment hearing. (Doc. 23-3). Upon review, these entries are reasonable. These entries will be allocated as costs pursuant to 28 U.S.C. § 1920 and litigation expenses and 42 U.S.C. § 12205.

Accordingly, after the court's review of the motion and for the reasons set forth above, it is hereby **ORDERED** that:

1) Plaintiff's motion for attorney's fees, (Doc. 22), is **GRANTED** in part; and

2) The Clerk of Court is directed to enter an amended judgment to include $8,750.00 in attorney's fees, $461.65 in taxable costs under 28 U.S.C. § 1920 and $202.88 in litigation expenses pursuant to 42 U.S.C. § 12205.

Date: 12/29/25

_____
JUDGE JULIA K. MUNLEY
United States District Court